UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| KRIS SAKELARIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2: 05-CV-158 |
| | ) | |
| JAMES DANIKOLAS, | ) | |
| | ) | |
| Individually and in his capacity as Judge of the Lake County Superior Court | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Kris Sakelaris was fired from her position as a Magistrate Judge in Lake County Superior Court because she refused to lie for her boss, Judge James Danikolas (the defendant in this matter), when he was being investigated by the Indiana Commission on Judicial Qualifications. At least, this is what she claims in her complaint brought pursuant to § 1983, the First Amendment, and Indiana state law. We accept this as true for our present purposes because the matter is before the Court on a Motion for Judgment on the Pleadings brought by Danikolas. For the following reasons, the Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part.

## I.  BACKGROUND

Sakelaris was employed as a Magistrate Judge in Lake County Superior Court from January 2002 until she was discharged in May 2003. During her tenure as a magistrate judge, Sakelaris participated in disciplinary proceedings against Danikolas in connection with a complaint that the Indiana Commission on Judicial Qualifications (the "Commission") filed

alleging that Danikolas had violated the rule against *ex parte* communications.  Specifically, in December 2002, Sakelaris gave a deposition.  Although we do not know the substance of Sakelaris's statements during the deposition, according to the complaint, Danikolas expected her to give false testimony.  When she refused to do so, Danikolas became upset.  Almost immediately thereafter, Danikolas began retaliating against Sakelaris, and then a few months later, he fired her.

The Commission opened another investigation against Danikolas in March 2004.  This time, the Commission alleged that Danikolas violated the Code of Judicial Conduct by firing Sakelaris in retaliation for her testimony at the December 2002 deposition.  After a hearing, a panel of Special Masters found that the Commission had proven its charge by clear and convincing evidence.

Thereafter, Sakelaris filed this action against Danikolas, who is now deceased, in both his individual and official capacities alleging that Danikolas violated her First Amendment rights by firing her in retaliation for her deposition testimony as well as violations of the Indiana Constitution and Indiana wrongful discharge laws.

## II.  DISCUSSION

### A.  Rule 12(c) Standards

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the parties have filed a complaint and an answer.  In considering such a motion, a court applies the same legal standards that apply to motions to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

A motion under Rule 12(c) is not granted "unless it appears beyond a doubt that the non-moving party cannot prove any facts that would support his claim for relief." *Id.* (citations and alterations omitted). When ruling on a motion for judgment on the pleadings, the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

Danikolas faces a high hurdle in the present motion because federal complaints need only plead claims, not facts. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). The burden on Plaintiff is therefore a modest one: "It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits . . . that will let the defendant investigate. A full narrative is unnecessary." *Id.* The Seventh Circuit has admonished that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . . ' should stop and think: What rule of law requires a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d, 706, 708 (7th Cir. 2005) (emphasis omitted). Thus, a plaintiff receives the benefit of "any fact that could be established later consistent with the complaint's allegations." *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006).

    **B.**    **Application to this Case**

        **1.**    **§ 1983 Claim**

Plaintiff claims that this is a First Amendment free speech case governed by the *Connick-Pickering* line of cases. *See Connick v. Myers*, 461 U.S. 138 (1983) and *Pickering v. Board of Education*, 391 U.S. 563 (1968). But Defendant claims that this case falls within the "policymaking employee exception" to *Pickering* balancing under the First Amendment. *See Elrod v. Burns*, 427 U.S. 347, 368 (1976) and *Branti v. Finkel*, 445 U.S. 507, 518 (1980). Under

the *Elrod-Branti* exception, public employees who hold policymaking or confidential positions can be fired for political affiliation. The Seventh Circuit has held that this exception also extends to political expression that compromises a policymaker's loyalty or reflects a breakdown of the sense of shared political mission between superior and subordinate. *See Warzon v. Drew*, 60 F.3d 1234, 1238 (7th Cir. 1995) (policymaking employee exception protected termination of employee who openly challenged her superior's policy positions); *Wilbur v. Mahan*, 3 F.3d 214, 218 (7th Cir. 1993) (policymaking employee exception protected sheriff's termination of deputy who decided to run against him in upcoming election).

But the *Branti-Elrod* line of cases do not apply when the plaintiff's political viewpoint is not what motivated the discharge. *Marshall v. Porter County Plan Commission,* 32 F.3d 1215, 1221 (7th Cir. 1994); *Bonds v. Milwaukee County*, 207 F.3d 969, 979 (7th Cir. 2000) (policymaking employee exception "does not immunize public employer action unconnected to and unmotivated by need for political loyalty"). For example, the Seventh Circuit has held that even a policymaker cannot be fired for speech criticizing his employer's abuse of office. *Marshall,* 32 F.3d at 1221. Likewise, an employer could not rescind a job offer to a policymaking employee based on political speech that the employee made in a prior job, where he was terminated not because of the political viewpoint of his speech, but because his employer believed that it reflected his indiscretion and disloyalty to his prior employer. *Bonds*, 207 F.3d at 979.

In this case, Plaintiff alleges that Defendant terminated her because she refused to lie, not because her political views were incompatible with Defendant's. If the evidence ultimately shows that Ms. Sakelaris' deposition testimony in fact deals with her political viewpoint, and

4

therefore places her within the policymaker exception, that is a matter best addressed at summary judgment. At that time, armed with evidence, not allegations, the Court will be better able to engage in the appropriate analysis. But looking only at the pleadings, this case does not fall within the *Elrod-Branti* exception to the *Connick--Pickering* analysis.

Defendant's cases, *Walsh v. Heilmann*, 472 F.3d 504 (7th Cir. 2006) and *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988) are inapposite. Defendant tries to show that Plaintiff's position as a magistrate was one involving the making and implementation of policy, like the hearing officer and judges *pro tempore* discussed in those cases. Defendant concludes that, because plaintiffs in those cases could be terminated for their political affiliation, Sakelaris "enjoyed no First Amendment protection in her job as a Magistrate." (Def.'s Memo. at 8.) For the reasons discussed above, one does not follow from the other. Although *Walsh* and *Kurowski* may bear on the question of whether a magistrate is a policymaking or policy-implementing position, that determination does not end the First Amendment inquiry. Even if the Court were to assume that Plaintiff is a policymaker, that would not bar her claims at this stage, because, again, "the policymaking employee exception does not apply . . . when the speech at issue does not implicate the employee's politics or substantive policy viewpoints." *Bonds*, 207 F.3d at 979; *see also Vargas-Harrison v. Racine Unified School Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (applying *Bonds*, but concluding that termination was appropriate where principal's speech on school funding "placed her in square opposition to the stated goals and policies of her superiors").[1] Thus, whether Plaintiff was a policymaker is neither here nor there in this case, where the

---

[1] For the same reasons, we deny Danikolas' request for qualified immunity at this stage in the litigation. Ever since *Bonds* and *Vargas-Harrison,* it has been clear that there is no broad policymaking exception to dismissals from public employment based on speech, especially

5

allegations are that Sakelaris was fired for speaking out about her employer's alleged ethical lapses, not politics or policy.

In sum, at this stage in the litigation – on a motion for judgment on the pleadings – we need only determine whether there is *any* set of facts that would support Plaintiff's claim for relief. Plainly, there are. Though we need not decide it at this point – indeed, we don't even know what Sakelaris said – her speech at the deposition may well be constitutionally protected; and it certainly is possible that she was fired because of it. That is all we need decide for now. The Section 1983 claim therefore survives the Motion for Judgment on the Pleadings.

## 2. Claim under Article I, Section 9 of the Indiana Constitution

We move now to Plaintiff's claim based on Article I, Section 9 of the Indiana Constitution. Plaintiff claims that there is a private right of action under the Indiana Constitution. She asks that we follow Judge Moody's view of the matter in *Discovery House, Inc. v. Consolidated City of Indianapolis*, 43 F. Supp. 2d 997, 1004 (N.D. Ind. 1999). However, that view has now been rejected by the Indiana Supreme Court in *Cantrell v. Morris*, 849 N.E.2d 488, 492 (Ind. 2006). In that case the Indiana Supreme Court held that there is no private right of action under Article I, Section 9 of the Indiana Constitution. As the Court noted: "we conclude that whether or not Article I, Section 9 of the Indiana Constitution affords any protection to public employees under some circumstances, a terminated employee has no private right of action for damages that arises under that Section." *Id.* Thus, Defendant's Motion for Judgment on the Pleadings is granted with respect to the state law claim specifically based on

---

where the speech is a form of criticism of an employer's abuse of office. *Bonds*, 207 F.3d at 979.

Article I, Section 9 of the Indiana Constitution.

### 3.      Claim for Wrongful Termination

Defendant also seeks to dismiss on the pleadings Plaintiff's wrongful termination claim. In *Cantrell*, the Indiana Supreme Court held that "to the extent Article I, Section 9 is relevant to any claim for discharge, the claim is simply a common law claim for wrongful discharge."  849 N.E.2d at 494.  A wrongful discharge claim against a state official is a tort under Indiana law governed by the Indiana Tort Claims Act (ITCA).  *Id.* at 494-95

Plaintiff's complaint states a valid claim for wrongful termination.  The Indiana Supreme Court has recognized a public policy exception to the at-will employment doctrine where an employee has been fired for refusing to commit an illegal act.  *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 393 (Ind. 1988).  Plaintiff's complaint alleges that Defendant expected her "to provide false testimony" at her deposition.  (Compl. ¶ 6.)  Thus, she alleges that she was fired for refusing to perjure herself.  While Defendant's brief suggests that there may be a fact issue about the nature of Plaintiff's testimony (Def. Mem. at 11-12), the Court is, of course, confined to the pleadings at this stage of the proceedings.

Further, the Court cannot determine at this stage that Defendant is entitled to immunity under the ITCA.  Defendant argues that he cannot be sued individually for damages by relying on Indiana Code § 34-13-3-5(c).  That section states that a lawsuit filed against an employee personally must allege that an "act or omission of the employee that causes a loss is . . . malicious . . . ."  Ind. Code § 34-13-3-5(c)(3).  Setting aside for the moment that Danikolas is sued both in his individual and in his official capacities, it matters not anyway, because Plaintiff *did* allege that Danikolas acted maliciously when he terminated Sakelaris.  (Compl. ¶ 9.).

7

Defendant also argues that he is immune because firing Plaintiff was a discretionary employment decision. Ind. Code § 34-13-3-3(7). It is true that employment decisions have been held to be discretionary for purposes of common law qualified immunity and the ITCA. *Cantrell*, 849 N.E.2d at 495. But under Indiana law, as under federal law, qualified immunity does not apply if a public official has "violated constitutional or statutory rights that were clearly established at the time he acted such that a reasonably competent official should have then known the rules of law governing his conduct . . . ." *Cantrell*, 849 N.E.2d at 496 (citation omitted). It is too early to tell whether Defendant violated any clearly established constitutional or statutory rights. In any event, immunity for discretionary functions only extends to a "governmental entity or an employee acting within the scope of the employee's employment[.]" Ind. Code § 34-13-3-3. Looking at the facts in the complaint in the light most favorable to Plaintiff, the Court cannot determine at this stage that Defendant was acting within the scope of his employment in terminating Plaintiff. Therefore, Defendant's Motion for Judgment on the Pleadings as it relates to the state law claim of wrongful discharge is denied.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings [Docket No. 35] is GRANTED IN PART and DENIED IN PART.

**SO ORDERED.**

ENTERED: March 23, 2007

> s/ Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT