UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| KRIS SAKELARIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2: 05-CV-158 |
| | ) | |
| JAMES DANIKOLAS, | ) | |
| | ) | |
| Individually and in his capacity as Judge of the Lake County Superior Court | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Lake County Judge James Danikolas fired his magistrate judge, Plaintiff Kris Sakelaris, and, after a contested hearing before a panel of Special Masters, he was disciplined by the Indiana Supreme Court as a result. Plaintiff has sued Danikolas under § 1983 and Indiana state law claiming her discharge was wrongful and a violation of her civil rights. In the pending motion for summary judgment [Doc. 34], Plaintiff contends that Judge Danikolas is barred from re-litigating the facts relevant to Plaintiff's claims in the present action because these facts were already conclusively established in the course of the earlier state disciplinary action against Judge Danikolas. Plaintiff therefore asks this Court to employ offensive collateral estoppel to preclude Danikolas from litigating questions of liability in this action. In the exercise of our discretion we refuse to do so, and thus Plaintiff's Motion for Summary Judgment is **DENIED.**

## Background

Plaintiff, Kris Sakelaris, began working as a full-time magistrate judge of the Lake Superior Court, Room 3, in January 2002. In May 2002, the Indiana Commission on Judicial

1

Qualifications filed charges against Judge Danikolas alleging that he violated Canon 3B(8) of the Code of Judicial Conduct by engaging in *ex parte* communications with litigants in his court.  As part of the disciplinary proceedings, Plaintiff was deposed on December 20, 2002, and she provided testimony regarding her knowledge of the circumstances surrounding the alleged *ex parte* contact. On May 1, 2003, a little more than four months after her deposition, Judge Danikolas terminated Plaintiff's employment as a magistrate judge for the Lake Superior Court.

On June 7, 2003, Plaintiff filed with the Commission a request for investigation against Judge Danikolas, alleging that Judge Danikolas had discharged her in retaliation for her earlier deposition testimony.  The Commission instituted an investigation and sent Judge Danikolas a Notice of Investigation, requesting Judge Danikolas to identify every basis for his decision to discharge Plaintiff.  On March 16, 2004, the Commission filed formal disciplinary charges with the Indiana Supreme Court alleging that Judge Danikolas violated the Code of Judicial Conduct by discharging Plaintiff in retaliation for her providing unhelpful deposition testimony in the earlier disciplinary proceeding.  Three trial judges were then assigned as special masters of the proceedings.

On January 24, 2004, the parties (i.e., the Commission and Judge Danikolas) and their respective counsel appeared before the Special Masters for a two-day evidentiary hearing on the charges.  After the hearing, the Special Masters prepared and ultimately issued a Report of Findings of Fact, Conclusions of Law, and Recommendation ("Report").  [Doc. 34-1.]

In their Report, the Special Masters concluded that Judge Danikolas' stated reasons for discharging Plaintiff were pretexts to cover up his actual retaliatory motives for the firing, namely, her perceived disloyalty and her failure to fall on the sword for Judge Danikolas during her deposition.  The Special Masters concluded that Judge Danikolas violated Canons 1, 2A, and

2

3(C)(1) of the Code of Judicial Conduct and committed willful misconduct in office because he abused the power of his office by terminating Plaintiff's employment for the purpose of retaliating against her for acting as a witness in his disciplinary case.  This ruling was appealed to the Indiana Supreme Court, and, after reviewing the record, the Supreme Court found that the Commission proved, by clear and convincing evidence, that Judge Danikolas committed judicial misconduct.  *In Re the Matter of the Honorable James Danikolas*, 838 N.E.2d 422 (Ind. 2005).

## Discussion

Plaintiff asks this Court to give preclusive effect to the findings in the Special Master's Report prepared in the course of the disciplinary proceeding against Judge Danikolas.  Plaintiff argues that if this Court bars re-litigation of these facts under the doctrine of collateral estoppel, this Court should grant summary judgment in her favor on her First Amendment and wrongful discharge claims because the Conclusions of Fact contained within the Report establish clear liability against Judge Danikolas.  Accordingly, the threshold issue in this analysis is to determine whether the doctrine of collateral estoppel should be applied in the present action.

Traditionally, if an issue was actually litigated in a prior adjudication and the original judgment was based on the outcome of that issue, the party against whom the issue was decided would be barred from relitigating that issue in subsequent litigation against the same party.  *See, e.g., Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971).  Federal and state courts have consistently recognized the benefits associated with the application of collateral estoppel, namely, to protect litigants from the burden of relitigating an identical issue with the same party and to promote judicial economy by preventing needless litigation.  *Rockford Mutual Insurance Co. v. Amerisure Insurance Co.*, 925 F.2d 193 (7th Cir. 1991).

In order to further protect litigants from the burden of relitigating and to promote judicial economy, the Supreme Court expanded the doctrine and found that mutuality between the parties is no longer a necessary predicate to the application of collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979). This process was given the moniker "offensive collateral estoppel." *Id.* Other jurisdictions, including Indiana, have followed suit and eliminated the mutuality requirement. *Tofany v. NBS Imaging Systems, Inc.*, 616 N.E.2d 1034, 1038 (Ind. 1993) (adopting the Supreme Court's holding in *Parklane*).

Under 28 U.S.C. § 1738, a federal court must give a state court judgment the same preclusive effect it would have in state court. *Migra v. Warren City School Dist.*, 465 U.S. 75 (1984). The Supreme Court has further declared that "when a state agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986). Thus, if an Indiana court would give preclusive effect to an administrative proceeding, the federal court should do likewise. *Klein v. Perry*, 216 F.3d 571, 573 (7th Cir. 2000); *see also U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F,3d 623, 628-29 (7th Cir. 2003) (state law controls when determining the preclusive effect of a state administrative agency's decision).

Here, Plaintiff asks this Court to apply collateral estoppel to the Special Master's findings made during the state disciplinary proceedings against Judge Danikolas. As such, this Court must determine whether Indiana law allows for the application of collateral estoppel under these circumstances.

Under Indiana law, trial courts are vested with very broad discretion in determining whether to apply offensive collateral estoppel. *Tofany*, 616 N.E.2d 1037-1038. One of the main

4

inquiries that must be made by a trial court is whether the application of collateral estoppel in a particular case will unfairly prejudice a party to the litigation.  In evaluating fairness issues inherent to any collateral estoppel analysis, Indiana courts look to the Supreme Court's guidance provided in *Parklane*.  *See Tofany*, 616 N.E.2d at 1038 (expressly adopting the Supreme Court's fairness analysis utilized in *Parklane*).  Moreover, under Indiana law, the application of collateral estoppel based on an administrative ruling is even narrower than the application of collateral estoppel based on a state court ruling.  *Lindemann v. Wood*, 799 N.E.2d 1230 (Ind.Tax 2003); *see also McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390 (Ind. 1998).

As explained in *Tofany*, in making a fairness inquiry, certain factors should be considered in determining whether to allow offensive collateral estoppel.  *Tofany*, 616 N.E.2d at 1038.  According to *Toffany,* these factors are illustrative, not exhaustive. *Id.*  For example, we should consider the defendant's incentive to litigate the prior action; the defendant's ability to defend the prior action; the defendant's interest in the prior action; how that interest was perceived by the defendant; whether the defendant used his most experienced litigator in defending the prior action; the forum in which that action was pending; and the ability of the defendant to engage in the full range of discovery in the prior matter.  *Id.*  To be blunt about it, the test as to whether to apply offensive collateral estoppel is a fuzzy one – as ones based on simple notions of fairness usually are.  It is for this reason that we are given "broad discretion" when determining whether to apply offensive collateral estoppel. *Parklane Hosiery*,439 U.S. at 331.

Here, Plaintiff brings the present cause of action against Judge Danikolas in both his individual and official capacities.  A suit against a public employee in his official capacity is equivalent to a suit against the governmental entity that he serves.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("an official-capacity suit is, in all respects other than name, to be

treated as a suit against the entity"); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir.1987) (same). Therefore, Plaintiff's action against Judge Danikolas in his official capacity is actually a suit against the governmental entity that employed him.[1]

In effect, Plaintiff asks this Court not only to apply collateral estoppel against Judge Danikolas, but also against the governmental entity that employed him. But it was not a party to the prior action. That entity had no ability to protect its interest in the disciplinary proceeding against Judge Danikolas; no ability to take discovery in the matter; no ability to raise potentially viable defenses; and no ability to appeal the adverse ruling of the Special Masters. In sum, the prior proceeding in this case was a matter involving judicial discipline, and it was a proceeding in which the official capacity defendant in this case (i.e., the governmental entity that employed Danikolas) had no ability to affect the outcome and no stake in it either.

Based on the evidence presented to this Court, it is clear that out of all the parties before the Court in this action, only Judge Danikolas, in his individual capacity, could arguably be considered a party to the earlier disciplinary proceedings. The application of collateral estoppel against Judge Danikolas, in his official capacity, would be manifestly unfair because the governmental entity which employs Danikolas – that is, the entity actually being sued – did not have an adequate opportunity to litigate the issues in the disciplinary proceedings against Danikolas. Of course, the concerns of the collateral impact and unfairness to Judge Danikolas, in his official capacity, would still be present if this Court limited the preclusive effect of the rulings in the disciplinary proceedings to Judge Danikolas, in his individual capacity. Because this Court finds that the application of collateral estoppel in the present action would be

---

[1]Following the death of Judge Danikolas, Plaintiff received leave to substitute presiding Judge Elizabeth Tavitas for Judge Danikolas in his official capacity. [Doc. 49.]

fundamentally unfair to the defendants in this case, this Court need not address the defendants' remaining public policy arguments raised under *United States v. Mendoza*, 464 U.S. 154 (1984).

## Conclusion

In sum, it is clear that the findings of the Special Masters in the state disciplinary action should not be given preclusive effect in the present action because it would unfairly prejudice Judge Danikolas' official capacity defense. Accordingly, Plaintiff's Motion for Partial Summary Judgment [Doc. 34] is hereby **DENIED**.

**SO ORDERED.**

ENTERED: March 23, 2007

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT